NUMBER
13-01-144-CR

 

                             COURT
OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                                CORPUS
CHRISTI

___________________________________________________________________

 

SERVANDO CASTANEDA,                                                     Appellant,

 

                                                   v.

 

THE STATE OF TEXAS,                                                          Appellee.

___________________________________________________________________

 

                        On
appeal from the 389th District Court

                                  of
Hidalgo County, Texas.

__________________________________________________________________

 

                                   O
P I N I O N

 

                  Before
Justices Dorsey, Hinojosa, and Rodriguez

                                Opinion
by Justice Rodriguez

 








Appellant, Servando Castaneda, brings this appeal following his
conviction for possession of marihuana. 
By seven issues, Castaneda contends he was denied effective assistance
of counsel, the evidence was not factually sufficient, and the trial court
erred by: (1) denying a request for a jury shuffle; (2) commenting on his
failure to testify and on other alleged acts, crimes, or wrongs; (3) denying
his motion to suppress; and (4) denying his motion for new trial.  We affirm.

I.  Background








Deputy Sheriff Miguel Olaguez received a tip that crack was
being sold from Castaneda=s
residence.  En route to Castaneda=s residence,
Deputy Olaguez stopped a vehicle because the driver was not wearing a
seatbelt.  The driver identified himself
as Castaneda.  Deputy Olaguez gave
Castaneda a verbal warning concerning the seatbelt violation and informed him
that he received a tip about drug activity at Castaneda=s
residence.  Castaneda drove back to his
residence and Deputy Olaguez followed him. 
Deputy Olaguez and another deputy then obtained both verbal and written
consent to search Castaneda=s
residence.  Castaneda followed the two
officers as they searched his home.  In
Castaneda=s bedroom
closet, there was a strong smell of marihuana, but the officers did not find
any drugs in there.  The officers then
went into Castaneda=s living room
and asked for consent to search two duffel bags and two hard-shell
suitcases.  Castaneda claimed ownership
of the two duffel bags and denied ownership of the two hard-shell suitcases,
but he gave consent for the officers to search all four containers.  The duffel bags were empty, but the two
hard-shell suitcases contained marihuana. 
Castaneda was placed under arrest, given his Miranda warnings,
and placed in the back of a patrol car. 
Deputy Olaguez then asked Castaneda if there was anymore marihuana in
his property.  Castaneda stated there was
more marihuana and he led the officers to a one room building in Castaneda=s back yard,
where approximately five hundred pounds of marihuana was recovered.

Following a trial to a jury, Castaneda was found guilty of
possession of marihuana in an amount of 2,000 pounds or less, but more than
fifty pounds.  The trial court sentenced
Castaneda to twenty years in the Institutional Division of the Texas Department
of Criminal Justice and assessed a $10,000.00 fine.  This appeal ensued.

II. 
Jury Shuffle

By his first issue, Castaneda contends the trial court erred by
denying his request for a jury shuffle. 
Article 35.11 of the code of criminal procedure requires the seating
order of the venire be randomly shuffled at the timely request by either party.  See Tex.
Code Crim. Proc. Ann. art. 35.11 (Vernon 1989 & Supp. 2002); Williams
v. State, 719 S.W.2d 573, 574-75 (Tex. Crim. App. 1986).  A timely motion to shuffle must be presented
or urged prior to the commencement of the voir dire examination of the jury
panel assigned to the case.  Williams,
719 S.W.2d at 575.








In this case, Castaneda filed a pre-trial motion asking for a
jury shuffle.  The trial court denied the
motion on the same day the jury panel was seated in court.  Thus, the trial court erred by denying
Castaneda=s timely motion
for a jury shuffle.  See id.; Smith  v. State, 648 S.W.2d 695, 696 (Tex. Crim.
App.1983).  However, because the right to
a jury shuffle is statutory in nature, the error must be evaluated for harm
under the standard for non-constitutional errors.  Ford v. State, 73 S.W.3d 923, 924
(Tex. Crim. App. 2002).  That standard
provides, A[a]ny other
error, defect, irregularity, or variance that does not affect substantial
rights must be disregarded.@  Tex.
R. App. P. 44.2(b).  To assess
non-constitutional errors, we examine whether the purpose of the statute or
rule violated was thwarted by the error. 
See Ford, 73 S.W.3d at 926; Roethel v. State, No.
03-01-00268-CR, 2002 Tex. App. LEXIS 4437, at *10 (Austin June 21, 2002, no
pet.).

In Ford, the court of criminal appeals reversed the Fort
Worth Court of Appeals decision based on how it applied a harm analysis after
determining the trial court erred in refusing to grant a jury shuffle.  See Ford, 73 S.W.3d at 924; see
also Roberts v. State, No. 476-99, 2002 Tex. Crim. App. LEXIS 130, at *2
(June 19, 2002) (explaining Ford, 73 S.W.3d 923).  The Ford court explained that the
purpose of the jury shuffle is to ensure venire members are listed in a random
order.  Roberts, 2002 Tex. Crim.
App. LEXIS 130, at *2 (citing Ford, 73 S.W.3d at 926).  Because applicable rules and statutes already
require that jury panels be listed randomly from the outset, the Ford
court held that a trial court=s failure to
order a shuffle does not, by itself, indicate a nonrandom listing of the
venire.  See id. (citing Ford,
73 S.W.3d at 926).  The Ford court
concluded that because A[n]othing in
the record . . . indicates that the procedures outlined in the applicable
statutes and rules [by which individual panels are drawn] were disregarded,
that the panel was reordered after being assembled, or that the process of
assembling a jury panel was subverted in some fashion to achieve a nonrandom
listing of the venire,@ the trial
court=s error in
refusing to allow a jury shuffle was harmless. 
Ford, 73 S.W.3d at 926.








Following this same analysis, because there is nothing in the
record to indicate that the procedures outlined in the applicable statutes and
rules were disregarded or that the process of assembling a jury panel was
subverted to achieve a nonrandom listing of the venire, we conclude the trial
court=s refusal to
grant Castaneda=s jury shuffle
motion was harmless error.  See
Roberts, 2002 Tex. Crim. App. LEXIS 130, at *2; Ford, 73 S.W.3d at
926.  Castaneda=s first issue
is overruled.

III.  Impermissible Comment

By his second and third issues, Castaneda contends the trial
court, during the punishment phase of the trial, impermissibly commented on his
failure to testify and, based on the same comment, considered an alleged
speculative prior bad act in assessing punishment.

However, appellant failed to object to the trial court=s comment.  Thus, Castaneda has waived any error.  See Tex.
R. App. P. 33.1; see also Sanders v. State, 963 S.W.2d 184,
190-91 (Tex. App.BCorpus Christi
1998, pet. ref=d) (must object
to alleged error or it is waived). 
Castaneda=s second and
third issues are overruled.

IV.  Motion To Suppress








By his fourth point of error, Castaneda contends the trial
court erred by denying his motion to suppress evidence seized after the search
of his residence.  Specifically,
Castaneda argues the trial court erred in its denial of the motion in three key
respects: (1) the propriety of the alleged arrest; (2) waiver of Castaneda=s Miranda
rights; and (3) reasonableness of the search.[1]


A.  Standard of Review

The typical motion to suppress case will be reviewed with a
bifurcated standard of review giving almost total deference to a trial court=s express or
implied determinations of fact, and review de novo the court=s application
of the law of search and seizure to those facts.  Maxwell v. State, 73 S.W.3d 278, 281 (Tex.
Crim. App. 2002); State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App.
2000).  Mixed questions of law and fact
that turn on the credibility and demeanor of a witness are reviewed under a
total deference standard.  Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  Mixed questions of law and fact which do not
turn on the credibility and demeanor of a witness are reviewed de novo.  Id.  When, as here, the trial
court does not make findings of fact, we view the evidence in the light most
favorable to the trial court=s ruling and
assume the trial court made implicit findings of fact that support its ruling
so long as those findings are supported by the record.  See Maxwell, 73 S.W.3d at 281; Ross,
32 S.W.3d at 855.  If the decision is
correct under any theory of law applicable to the case, the ruling will be
sustained.  Roquemore v. State, 60
S.W.3d 862, 866 (Tex. Crim. App. 2001).

 








B.  Propriety of Original
Arrest

Castaneda argues that after he was stopped for a seatbelt
violation, Deputy Olaguez=s subsequent
conduct resulted in Castaneda=s unreasonable
arrest. 

A  person is arrested
when he has been actually placed under restraint or taken into custody by an
officer.  Tex. Code Crim. Proc. Ann. art 15.22 (Vernon 1979).  An arrest is complete when a person=s liberty of
movement is restricted or restrained.  Chambers
v. State, 866 S.W.2d 9, 19 (Tex. Crim. App. 1993).  AWhere the
circumstances show that the person voluntarily accompanied the police in the
investigation of a crime, and he knew or should have known that the police
might suspect that he is implicated in the offense, whether he is acting upon
the invitation, urging, or request of police officers, and not being forced,
coerced or threatened, the act is voluntary and the person is not then in
custody.@  Id.








In this case, Deputy Olaguez was justified in his initial stop
of Castaneda=s vehicle for a
seatbelt violation.  See Tex. Transp. Code Ann. ' 545.413
(Vernon 1999 & Supp. 2002); Morrison v. State, 71 S.W.3d 821, 829
(Tex. App.BCorpus Christi
2002, no pet.).  Deputy Olaguez gave
Castaneda a verbal warning about the seatbelt violation.  During this brief detention, Deputy Olaguez
learned Castaneda was the owner of the residence Deputy Olaguez was going to
search.  After learning that Castaneda=s brother was
at his residence, Deputy Olaguez told Castaneda he had a tip that drugs were
being sold from Castaneda=s  home and he wanted consent to search the
residence.  Castaneda then told Deputy
Olaguez there were no drugs at his home and he did not have a problem with
Deputy Olaguez searching there.  Castaneda
then drove to his residence, met Deputy Olaguez there, and signed a consent to
search form.

Although Castaneda testified that he felt he did not have a
choice but to return to his home and consent to the search, we do not find
Castaneda was ever arrested, seized, or taken into custody before he gave
consent to search.  See Chambers,
866 S.W.2d at 19.

C.  Miranda Rights

Castaneda next argues the trial court should have suppressed
the evidence obtained from the building located behind Castaneda=s home because
he never waived his Miranda rights.[2]

In Miranda, the United States Supreme Court delineated
specific procedures to safeguard the Fifth Amendment privilege against
self-incrimination during custodial interrogation.  Miranda v. Arizona, 384 U.S. 436,
476-79 (1966).  Miranda held that
unless law enforcement officers give certain warnings prior to questioning a
person in custody, and follow certain procedures during the course of any
subsequent interrogation, the prosecutor may not use in its case-in-chief any
statement by the defendant over his objection. 
Watson v. State, 762 S.W.2d 591, 596 (Tex. Crim. App. 1988)
(citing Miranda, 384 U.S. at 476-79).








The right to remain silent, once invoked, requires the police
to immediately cease interrogating a suspect. 
See Michigan v. Mosley, 423 U.S. 96, 103-04 (1975); Watson,
762 S.W.2d at 596.  However, before we
may address Castaneda=s contention
that he never waived his Miranda rights, it must first be determined
whether or not Castaneda first invoked these rights.  See Ramirez v. State, 44 S.W.3d 107,
110 (Tex. App.BAustin 2001, no
pet.) (analysis of Miranda violation depends on resolution of threshold
question of whether suspect invoked his right to silence); Edwards v. State,
956 S.W.2d 687, 689 (Tex. App.BTexarkana 1997,
no pet.) (threshold issue is whether or not suspect invoked his right to remain
silent).

In this case, Castaneda was read his Miranda rights
before he was asked whether there was any additional marihuana on his
property.  There is no evidence that
Castaneda ever indicated, in any manner, that he wished to remain silent after
he was given his Miranda warnings. 
See Maestas v. State, 987 S.W.2d 59, 62 (Tex. Crim. App.
1999).  Thus, because Castaneda did not
initially invoke his right to remain silent, we do not need to address whether
or not his Miranda right to remain silent was violated.  See Ramirez, 44 S.W.3d at 110; Edwards,
956 S.W.2d at 689; see also Watson, 762 S.W.2d at 597 (A[I]mportant
question is whether the appellant invoked his constitutional right to remain
silent.@).

Viewing the evidence in the light most favorable to the ruling,
see Maxwell, 73 S.W.3d at 281, we find the trial court did not err in
denying Castaneda=s motion to
suppress.  Castaneda=s fourth issue
is overruled.








V.  Ineffective Assistance of Counsel








By his fifth issue, Castaneda contends his trial counsel was
ineffective.  The United States Supreme
Court and the Texas Court of Criminal Appeals have promulgated a two-prong test
to determine whether representation was so inadequate that it violated a
defendant=s sixth
amendment right to counsel.  See, e.g.,
Strickland v. Washington, 466 U.S. 668, 687 (1984); Hernandez v. State,
726 S.W.2d 53, 54-55 (Tex. Crim. App. 1986); Munoz v. State, 24 S.W.3d
427, 433 (Tex. App.BCorpus Christi
2000, no pet.).  To establish ineffective
assistance of counsel, appellant must show: (1) his attorney=s
representation fell below an objective standard of reasonableness; and (2)
there is a reasonable probability that, but for his attorney=s errors, the result
of the proceeding would have been different. 
Strickland, 466 U.S. at 687; Dorsey v. State, 55 S.W.3d
227, 237 (Tex. App.BCorpus Christi
2001, no pet.).  Appellant has the burden
of proving ineffective assistance of counsel by a preponderance of the
evidence.  See Munoz, 24 S.W.3d at
434; Stone v. State, 17 S.W.3d 348, 350 (Tex. App.BCorpus Christi
2000, pet. ref=d).  An allegation of ineffective assistance of
counsel will only be sustained if it is firmly founded and the record
affirmatively demonstrates counsel=s alleged
ineffectiveness.  Guzman v. State,
923 S.W.2d 792, 797 (Tex. App.BCorpus Christi
1996, no pet.).  In assessing a claim of
ineffective assistance of counsel, there is a strong presumption that counsel=s conduct fell
within the wide range of reasonable professional assistance.  Garcia v. State, 57 S.W.3d 436, 440
(Tex. Crim. App. 2001).  Also, in the
absence of evidence of counsel=s reasons for
the challenged conduct, an appellate court will assume a strategic motivation
and will not conclude that the conduct was deficient unless the conduct was so
outrageous that no competent attorney would have engaged in it.  See id.; Thompson v. State, 9
S.W.3d 808, 814 (Tex. Crim. App. 1999).

A.  Analysis

Castaneda argues his counsel was ineffective for failing to:
(1) challenge the manner in which the search of the suitcases was conducted;
(2) call witnesses to testify regarding the legality of the traffic stop; and
(3) object to the trial court=s impermissible
comment on his failure to testify and object when it considered an alleged
speculative prior bad act in assessing punishment.

1.  Manner of the Search








Castaneda argues his trial counsel was ineffective during the
motion to suppress for not challenging the manner in which the two suitcases
were searched.  Upon review of the
record, however, it is apparent Castaneda=s trial counsel
did challenge the  manner in which the
suitcases were searched.  The mere fact
Castaneda disagrees with the way his attorney challenged the search does not
overcome the strong presumption that his attorney=s conduct fell within the wide range of
reasonable professional assistance.  See
Garcia, 57 S.W.3d at 440. 
Furthermore, Castaneda has failed to satisfy either burden of Strickland
because he has not shown, by a preponderance of the evidence, see Munoz,
24 S.W.3d at 434, his attorney=s
representation fell below an objective standard of reasonableness, or the
outcome of the trial would have been different but for his attorney=s errors.  Strickland, 466 U.S. at 687.  Thus, this argument is without merit.

2.  Failure to Call
Witnesses

Castaneda next argues his trial counsel was ineffective because
he failed to call two witnesses who would have raised a factual dispute
regarding the legality of the traffic stop.

An attorney=s failure to
call witnesses is irrelevant unless the appellant can show that the witnesses
were available and he would have benefitted from their testimony.  King v. State, 649 S.W.2d 42, 44 (Tex.
Crim. App. 1983); Rangel v. State, 972 S.W.2d 827, 838 (Tex. App.BCorpus Christi
1998, pet. ref=d).  A decision not to call a witness should be
reviewed only if there is no plausible basis for the omission.  Velasquez v. State, 941 S.W.2d 303,
310 (Tex. App.BCorpus Christi
1997, pet. ref=d).








In this instance, Castaneda=s attorney did not call as witnesses the
two passengers who were in Castaneda=s vehicle when
it was stopped by Deputy Olaguez. 
Castaneda claims that, if they had been called, the witnesses would have
testified they all were wearing seatbelts at the time of the stop and,
therefore, there was no justifiable reason for Deputy Olaguez to stop Castaneda=s vehicle.  Based on the evidence raised at the motion
for new trial, the two witnesses were in jail and were available to testify.  See Rangel, 972 S.W.2d at 838.   Also, if the witnesses would have testified
they all were wearing seatbelts when Deputy Olaguez stopped Castaneda=s vehicle, this
information probably would have benefitted Castaneda during the motion to
suppress hearing.  See id.

Even though the testimony by the two witnesses may have
assisted Castaneda=s case in the
motion to suppress hearing, there is evidence that Castaneda=s attorney
spoke with one of the witness=s attorneys
concerning Castaneda=s case.  Thus, Castaneda=s attorney may have decided not to have
them testify for any number of strategic reasons.  See  Garcia, 57 S.W.3d at 440.  We conclude, based on the record, Castaneda
has failed to show by a preponderance of the evidence that his attorney=s
representation fell below an objective standard of reasonableness, and the
result of the proceeding would have been different if the two witnesses were
called to testify.  See Strickland,
466 U.S. at 687.

3.  Impermissible Comment

Finally, Castaneda argues his counsel was ineffective for
failing to timely object when the trial court made an impermissible comment,
and then, based on the same comment, considered an alleged speculative prior
bad act in assessing punishment.

To successfully argue that trial counsel=s failure to
object amounted to ineffective assistance, an appellant must show that if trial
counsel had objected, the trial judge would have committed error in refusing to
sustain the objection.  Vaughn v.
State, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996); Brown v. State, 6
S.W.3d 571, 575 (Tex. App.BTyler 1999,
pet. ref=d).








The trial court made the following statement during the
pronouncement of appellant=s sentence:

I considered
the testimony of the probation officer. 
Apparently, there=s still a case
pending in Oklahoma that we don=t even know
about. . . .  The amount of marijuana
that was found in this case certainly does not talk about personal use.  We have no way of knowing how much
marijuana had been shipped prior to this time, and I don=t think your
son=s going to tell
us, if that=s the case. [emphasis
added.]  I feel that your son has
violated a confidence of the State.  He
violated your confidence, sir, and if the defendant will please stand. . .
.  

 

The comment was made after both parties had closed.  Castaneda had elected for the trial court to
assess his punishment instead of the jury. 
Thus, because there was no jury present when the comment was made, no
harm could have resulted from said comment. 
See, e.g., Rosillo v. State, 953 S.W.2d 808, 817-18 (Tex. App.BCorpus Christi
1997, pet. ref=d) (state=s comments were
not of such a nature as to direct jury=s attention to
appellant=s failure to
testify).  Thus, Castaneda has failed to
show that if his attorney had objected, the trial judge would have committed
error in refusing to sustain the objection. 
See Vaughn, 931 S.W.2d at 566. 
We find Castaneda has failed to show by a preponderance of the evidence
that his attorney=s
representation fell below an objective standard of reasonableness, and that the
result of the proceeding would have been different if his attorney had objected
after the trial court made the complained of comment.  See Strickland, 466 U.S. at 687.  Castaneda=s fifth issue is overruled.

 

 








VI.  Factual Sufficiency

By his sixth issue, Castaneda contends the evidence is
factually insufficient to show he possessed at least fifty pounds of marihuana.

A.  Standard of Review

In evaluating the factual sufficiency of the evidence, this
Court must complete a neutral review of all the evidence.  King v. State, 29 S.W.3d 556, 563
(Tex. Crim. App. 2000) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000)). Weighing all of the evidence, we must then determine whether
the proof of guilt is so weak either as to undermine confidence in the fact
finder=s determination
or whether the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof.  Id.  However,
we are not free to reweigh the evidence and set aside a jury verdict merely
because we feel a different result is more reasonable.  See id.  Only when this Court determines that the
verdict is against the great weight of the evidence presented at trial so as to
be clearly wrong and unjust can we set aside a verdict for factual insufficiency.  Santellan v. State, 939 S.W.2d 155,
164-65 (Tex. Crim. App. 1997).  A clearly
wrong and unjust verdict is Amanifestly unjust,@ Ashocks the conscience,@ or Aclearly demonstrates bias.@  Rojas v. State, 986
S.W.2d 241, 247 (Tex. Crim. App. 1998); Santellan, 939 S.W.2d at 165.

B.  Analysis








Castaneda argues there
is factually insufficient evidence that the State=s technician tested fifty pounds worth of marihuana from the
packages found in Castaneda=s residence.  However, there
is no requirement for the State to weigh and test every piece of alleged
narcotic to prove that a defendant possessed the total weight of the drugs
seized.  See, e.g., Gabriel v. State,
900 S.W.2d 721, 721-22 (Tex. Crim. App. 1995) (rational for factfinder to
conclude that identically packaged substances, which appear to be same
substance, are in fact same substance); Henson v. State, 915 S.W.2d 186,
192 (Tex. App.BCorpus Christi 1996, no pet.) (rational for jury to conclude pills
which had same markings, color, and size were in fact same substance).

In this case, the
State=s technician, Robert Gutierrez, testified that he collected
nineteen bundles of marihuana; each bundle had a different weight and was
similarly wrapped.  See Gabriel,
900 S.W.2d at 722.  Gutierrez testified
that he randomly picked a couple of packages to test for analysis.  See Henson, 915 S.W.2d at 192.  The analysis revealed the substance in
the packages to be marihuana.  Id.  He further testified that the substances in
the other packages looked and smelled like the samples from the packages which
were tested and the total weight of all nineteen bundles was 588 pounds and two
ounces.  See Gabriel, 900 S.W.2d
at 722; Henson, 915 S.W.2d at 192. 
Furthermore, Castaneda could have refuted this evidence by conducting
independent chemical tests on all nineteen packages to show they did not
contain the same substance.  See Tex. Code Crim. Proc. Ann. art. 39.14
(Vernon 1979 & Supp. 2002); Gabriel, 900 S.W.2d at 722.  Thus, this argument is without merit.








Castaneda also argues
the evidence was factually insufficient to show he possessed the marihuana
recovered.  To prove intentional or
knowing possession of a controlled substance, the State must show that a
defendant exercised actual care, control, and management over the contraband,
and that he had knowledge that the substance in his possession was
contraband.  See King v. State,
895 S.W.2d 701, 703 (Tex. Crim. App. 1995). 
When an accused is not in exclusive possession and control of the place
where the contraband is found, it cannot be concluded she had knowledge or
control over the contraband unless there are additional independent facts and
circumstances that affirmatively link her to the contraband.  Lassaint v. State, No.
13-01-587-CR, 2002 Tex. App. LEXIS 4292, at *4 (Corpus Christi June 13, 2002,
no pet.) (citing Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim. App.
1995)).  Similarly, when contraband is
not found on the accused=s person or it is not in the exclusive possession of the accused,
additional facts and circumstances must link the accused to the
contraband.  Menchaca v. State,
901 S.W.2d 640, 651 (Tex. App.BEl Paso 1995, pet. ref=d).  Ultimately, the
question of whether the evidence is sufficient to affirmatively link the
accused to the contraband must be answered on a case by case basis.  Lassaint, 2002 Tex. App. LEXIS 4292,
at *8.








This Court has listed
numerous factors to consider in determining whether evidence is sufficient to
affirmatively link a defendant to contraband. 
See id. at *5-*7; Jenkins v. State, 76 S.W.3d 709, 712-13
(Tex. App.BCorpus Christi 2002, no pet.).[3]  Factors pertinent to this case include the
facts that: Castaneda owned and resided at the house where the marihuana was
seized; officers detected the odor of marihuana in Castaneda=s
closet; officers found two suitcases of marihuana in Castaneda=s
living room; and Castaneda led officers to the building behind his house that
contained packages of marihuana, packing materials, and a scale.  See Lassaint, 2002 Tex. App. LEXIS
4292, at *6-*7. 

After impartially reviewing all of the evidence and
giving proper deference to the verdict, we conclude that the verdict is not so
obviously weak or greatly outweighed by contrary proof as to indicate that a
manifest injustice has occurred.  See
King, 29 S.W.3d at 563; Rojas, 986 S.W.2d at 247.  Castaneda=s
sixth issue is overruled.








VII.  Motion For New Trial

By his seventh issue, Castaneda contends
the trial court erred by not ruling on his motion for new trial.  However, in accordance with rule 38.1(h) of
the Texas Rules of Appellate Procedure, we will only consider contentions that
are supported by clear and concise arguments with appropriate citations to
authorities.  Tex. R. App. P. 38.1(h). 
We find this issue to be inadequately briefed.  Castaneda=s seventh
issue is overruled.  See Tong v. State,
25 S.W.3d 707, 710 (Tex. Crim. App. 2000).

Accordingly, we affirm the trial court=s
judgment.                                                                  

NELDA V. RODRIGUEZ

Justice

 

Do not publish.

Tex. R. App. P. 47.3.

 

Opinion
delivered and filed

this 29th
day of August, 2002.

 











[1]In
accordance with rule 38.1(h) of the Texas Rules of Appellate Procedure, we will
only consider the assertions that are supported by clear and concise arguments
with appropriate citations to authorities. 
Tex. R. App. P. 38.1(h).  Thus, we will not address Castaneda=s
argument contesting the reasonableness of the search.





[2]See
Miranda v. Arizona, 384 U.S. 436, 476-79 (1966).





[3]The
nonexclusive list of factors is as follows:

                                                                                                                                                                                                                

1)
if contraband is in plain view or recovered from enclosed place; 2) accused was
owner of premises or had a right to possess the place where contraband found,
was owner or driver of automobile where contraband found; 3) accused found with
large amount of cash; 4) contraband was conveniently accessible to accused; 5)
contraband found in close proximity to accused; 6) odor of contraband present;
7) accused possessed contraband when arrested; 8) drug paraphernalia in plain
view or on accused; 9) physical condition of accused indicated under influence
of contraband; 10) conduct by accused indicated a consciousness of guilt; 11)
accused attempted to escape or flee; 12) accused made furtive gestures; 13)
accused had special connection to contraband; 14) occupants of premises gave
conflicting statements about relevant matters; 15) accused made incriminating
statements to connect himself to contraband; 16) quantity of contraband; and
17) accused observed in suspicious area under suspicious circumstances.

 

E.g.,
Lassaint v. State, No. 13-01-587-CR, 2002 Tex. App. LEXIS
4292, at *5-*7 (Corpus Christi June 13, 2002, no pet.); Jenkins v. State,
76 S.W.3d 709, 712-13 (Tex. App.BCorpus
Christi 2002, no pet.)