

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00005-CR

MARCELINO ELIAS GUTIERREZ                                   APPELLANT

V.

THE STATE OF TEXAS                                             STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
## TRIAL COURT NO. 1393715R

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury convicted Appellant Marcelino Elias Gutierrez of two counts of aggravated sexual assault of a child under age fourteen and one count of indecency with a child by contact and assessed his punishment at forty-five years' confinement for the assault offenses and ten years' confinement for the

---

[1]*See* Tex. R. App. P. 47.4.

indecency offense. In five issues, Gutierrez challenges the sufficiency of the evidence to support his conviction, argues that the trial court erred by denying his motion for a jury shuffle, and contends that the trial court abused its discretion by admitting and excluding certain evidence. We will affirm.

## II. BACKGROUND

In September 2013, six-year-old L.G. lived in a house with Mother, Father, her little brother, her fifty-two-year-old paternal grandfather Gutierrez, and his wife and young son. On September 19, 2013, Mother was in an upstairs bedroom folding laundry when L.G. told her that Gutierrez was going to help her with her homework. A few minutes later, after L.G. had entered Gutierrez's room, Mother heard Gutierrez say, "Not here." Mother became suspicious, saw Gutierrez and L.G. heading downstairs and holding hands, and decided to follow them. When Mother entered the kitchen, she saw Gutierrez removing his hand from inside of L.G.'s skirt. Gutierrez looked shocked when he saw Mother. Mother took L.G. upstairs and asked her about what Mother had just seen. L.G. first denied that anything had occurred, but when Mother asked her again, L.G. began to cry and said that "grandpa don't leave me alone" and that he "gives me kisses," pointing to her mouth and genitals. L.G. also said that Gutierrez pulls her skirt down and that he threatened to stop loving her and to kick her family out if she told.

Mother took her children to her mother's house and called the police. Mother gave a written statement, and L.G. was taken to the hospital for a sexual

2

assault examination and later interviewed at Alliance for Children. Authorities arrested Gutierrez. This appeal followed his trial and conviction.

### III. SUFFICIENCY

Gutierrez argues in his fifth issue that the evidence is insufficient to support his three convictions.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*, 99 S. Ct. at 2789; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015).

A person commits aggravated sexual assault of a child under age fourteen if he intentionally or knowingly causes the penetration of the sexual organ of a child younger than age fourteen by any means. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (2)(B) (West Supp. 2016). A person commits indecency with a child by contact if the person engages in sexual contact with a child younger than seventeen years of age. *Id.* § 21.11(a)(1) (West 2011). Sexual contact means any touching of, among other things, the breast of a child, if committed with the intent to arouse or gratify the sexual desire of any person. *Id.*

3

§ 21.11(c)(1). A child victim's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991).

Count one alleged that on or about September 19, 2013, Gutierrez "did then and there intentionally or knowingly cause the penetration of the sexual organ of [L.G.], a child younger than 14 years of age, by inserting his finger into her sexual organ." L.G. told a forensic interviewer that Gutierrez had penetrated her vagina with his hand. Further, the SANE examination revealed that L.G. had some redness on her perineum, which was consistent with rubbing or touching, and Gutierrez could not be excluded as a contributor of DNA evidence that authorities recovered from L.G.'s outer labia.

Count two alleged that on or about September 19, 2013, Gutierrez "did then and there intentionally or knowingly cause [his] mouth to contact the sexual organ of [L.G.], a child younger than 14 years of age." When L.G. outcried to Mother on September 19, 2013, L.G. began to cry and said that Gutierrez "gives me kisses" while pointing to her genitals.

Count four alleged that on or about September 19, 2013, Gutierrez "did then and there intentionally, with the intent to arouse or gratify [his] sexual desire, engage in sexual contact by touching the breast of [L.G.], a child younger than 17 years of age." L.G. told a forensic interviewer that Gutierrez had touched her breasts "a lot of times." Further, considering that evidence and that Gutierrez had told L.G. not to tell anyone about the abuse, the jury could have inferred that

4

Gutierrez had touched L.G.'s breasts with the intent to arouse or gratify his sexual desire. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981) (stating that the "specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks and all surrounding circumstances.").

Gutierrez argues that there is no evidence as to when any of the abuse occurred. "It is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); *see Garcia v. State*, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998) (explaining that time is not a material element of the offense and that the primary purpose of specifying a date in the indictment is to show that the prosecution is not barred by limitations). There is no statute of limitations for aggravated sexual assault or for indecency with a child. Tex. Code Crim. Proc. Ann. art. 12.01(1)(B), (E) (West Supp. 2016). Here, the indictment was returned and filed on November 26, 2014, and it alleged that all three offenses occurred "on or about the 19th day of September 2013." The evidence showed that the abuse occurred when L.G. lived with Gutierrez, which by September 19, 2013, when L.G. outcried to Mother, had been for no more than two months. The two months preceding September 19, 2013, occurred before November 26, 2014. Thus, the record contains sufficient evidence that the offenses occurred before the

5

indictment was presented. *See, e.g.*, *Blakeney v. State*, 911 S.W.2d 508, 514 (Tex. App.—Austin 1995, no writ) (holding that the evidence was sufficient to support conviction for aggravated sexual assault of a child because although "none of the State's witnesses could pinpoint with certainty the exact date of the offense," "all the testimony presented indicate[d] that the offense occurred around the end of October or beginning of November 1992, well before presentment of the indictment").

Gutierrez also argues that the evidence is insufficient to support his convictions because there were contradictions in the evidence, but the jury presumably resolved the conflicts in favor of the State, and we have no authority on appeal to otherwise reweigh the evidence. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Murray*, 457 S.W.3d at 448.

The evidence is sufficient to support Gutierrez's three convictions. We overrule his fifth issue.

## IV. JURY SHUFFLE

Gutierrez argues in his first issue that the trial court erred by denying his request to shuffle the jury panel for the reason that it was untimely.

To be timely, a motion for a jury shuffle must be made before voir dire begins. *Yanez v. State*, 677 S.W.2d 62, 71 (Tex. Crim. App. 1984). In non-capital cases, voir dire commences when the State begins its examination of the prospective jurors. *Williams v. State*, 719 S.W.2d 573, 577 (Tex. Crim. App. 1986).

6

The record reflects that after the panel entered the courtroom, the trial court administered the oath, requested that all cell phones be turned off, confirmed that no panel member was disqualified, introduced the parties, and asked if anyone was acquainted with the parties. After the State read its list of witnesses at the request of the trial court, but before the State began its examination, Gutierrez requested a jury shuffle, which the trial court implicitly denied by responding, "My ruling is that it's not timely."

Assuming without deciding that the trial court erred by denying Gutierrez's request, we cannot conclude that he suffered any harm. *See* Tex. R. App. P. 44.2(b); *Ford v. State*, 73 S.W.3d 923, 924 (Tex. Crim. App. 2002) ("Because the right to a jury shuffle is statutory in nature, any error in connection therewith must be evaluated for harm under the standard for nonconstitutional errors."). The purpose of a jury shuffle is to ensure that the members of the venire are listed in random order. *Ford*, 73 S.W.3d at 926. "The applicable rules and statutes already require that panels be listed randomly from the outset." *Id.* Thus, "[b]ecause the law requires that venire panels be assembled in random order, a trial judge's failure to order a shuffle does not, by itself, indicate a nonrandom listing of the venire." *Id.* Here, as in *Ford*, "[n]othing in the record of this trial indicates that the procedures outlined in the applicable statutes and rules were disregarded, that the panel was reordered after being assembled, or that the process of assembling a jury panel was subverted in some fashion to achieve a

7

nonrandom listing of the venire." *Id.* We therefore overrule Gutierrez's first issue.

## V. EVIDENTIARY RULINGS

In his second, third, and fourth issues, Gutierrez challenges several trial court rulings admitting and excluding evidence.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). The ruling will be upheld if it is reasonably supported by the record and is correct under any applicable legal theory. *Id.*

### A. Video Recording of L.G.'s Forensic Interview

Gutierrez argues in his second issue that the trial court reversibly erred by admitting State's Exhibit 27, a video recording of L.G.'s forensic interview at Alliance for Children. He directs us to a recent decision from the court of criminal appeals holding that the trial court erred by admitting the videotaped statement of an outcry witness, *see Bays v. State*, 396 S.W.3d 580, 592 (Tex. Crim. App. 2013) (requiring form of outcry evidence to be conveyed through the testimony of a live witness), and contends that the video was not admissible either under the rule of optional completeness or to rebut a charge of fabrication.

The State did not offer the video into evidence until after Gutierrez had cross-examined the forensic interviewer, Charity Henry. On cross-examination, Henry confirmed that L.G. had said that Mother had told her that she would be taken away if she did not tell the truth during the forensic interview. Gutierrez

8

asked Henry whether she interpreted L.G.'s statement to mean that she was "expected to say certain things" during the interview. Later during the cross-examination, Gutierrez asked Henry if she had asked L.G. whether L.G. had talked about the September 19, 2013 incident on an occasion other than on September 19, 2013. Henry confirmed that she had and that L.G. had said, "I don't remember" before she "talked about it happening the same way as the other times." Gutierrez then asked, "But first, she said she didn't remember; is that correct?" Henry responded, "Yes."

Gutierrez's reliance on *Bays* is misplaced. The State did not offer the videotape into evidence for the purpose of establishing, under code of criminal procedure article 38.072, L.G.'s outcry statements to Henry. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a) (West Supp. 2016); *Bays*, 396 S.W.3d at 592 (observing that the "sole evidence" of the outcry statements was the videotape of the interview). Henry's testimony on direct examination served that specific purpose. The State offered the videotape into evidence to rebut the false impression that L.G. had said the things that she did during the forensic interview because she was pressured to do so by Mother, by Henry, or by both—an impression that may have been created when Gutierrez questioned Henry about only certain parts of the videotape. *See* Tex. R. Evid. 107; *Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011) (stating that the rule of optional completeness is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing). The

9

trial court could have reasonably concluded that the videotape was admissible for this reason. We overrule Gutierrez's second issue.

## B.    Mother's Written Statement and SANE Nurse's Protocol Notes

Gutierrez argues in his third issue that the trial court erred by excluding the written statement that Mother made for the police on September 19, 2013. In his fourth issue, Gutierrez argues that the trial court erred by excluding the SANE nurse's protocol notes. In both issues, Gutierrez argues that the documents were admissible under rule of evidence 612 because they were used by the witnesses to refresh their memories and because they had significant impeachment, as opposed to substantive, value. *See* Tex. R. Evid. 612(b). We agree with the State that Gutierrez failed to preserve these issues for appellate review because when he offered the documents into evidence, he did not advise the trial court that they were admissible for their "significant impeachment value" but not for their substantive value. *See* Tex. R. Evid. 105(b)(2) (providing that when evidence that is admissible for one purpose but not for another is excluded, the exclusion is not a ground for complaint on appeal unless the proponent expressly offered the evidence for its limited admissible purpose); *Dow v. State*, No. 03-02-00515-CR, 2003 WL 1922435, at *5 (Tex. App.—Austin Apr. 24, 2003, pet. ref'd) (mem. op., not designated for publication) (reasoning similarly).

Alternatively, the exclusion of the evidence was harmless. Nonconstitutional error that does not affect a defendant's substantial rights must be disregarded. *See* Tex. R. App. P. 44.2(b). A substantial right is affected

10

when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Regarding Mother's written statement, after the trial court declined to admit it into evidence the first time, Gutierrez proceeded to question Mother about numerous parts of the statement, pointing out either that her testimony differed in some respects from what was contained in the statement or that certain terms that she had used therein came from her and not from L.G. Thus, although the document was excluded from evidence, Gutierrez nevertheless utilized it to successfully cross-examine Mother. Regarding the SANE nurse's notes, Gutierrez offers no analysis demonstrating how he was harmed by their exclusion from evidence, nor do we observe any. Applying the appropriate review articulated above, the trial court's errors, if any, in excluding Mother's written statement and the SANE nurse's notes were harmless. *See Solomon*, 49 S.W.3d at 365. We overrule Gutierrez's third and fourth issues.

11

## VI. CONCLUSION

Having overruled Gutierrez's five issues, we affirm the trial court's judgments.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  MEIER, GABRIEL, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 25, 2016